[Civ. No. 42008. Second Dist., Div. Four. Mar. 6, 1974.]

DOROTHY RUTHERFORD et al., Plaintiffs and Appellants, v.
BOARD OF TRUSTEES OF THE BELLFLOWER UNIFIED SCHOOL
DISTRICT et al., Defendants and Appellants.

## COUNSEL

Brundage & Roseman and Steven Roseman for Plaintiffs and Appellants.

John H. Larson, County Counsel, and Kenneth E. Reynolds, Deputy County Counsel, for Defendants and Appellants.

## OPINION

**JEFFERSON, Acting P. J.**—Petitioners Rutherford, Strohbeen and Tremaine, nurses employed by the Bellflower Unified School District, sought to review an administrative decision (Code Civ. Proc., § 1094.5) by means of a writ of mandate directing the respondents, the five elected members of the Board of Trustees of the Bellflower Unified School District (hereinafter referred to as the Board), to vacate their decision not to employ the petitioners for the school year of 1972-1973. The trial court granted the writ, and both the petitioners and respondents have appealed.

The chronological background of the dispute does not appear to be in issue. The petitioners, along with 29 school teachers, were notified on March 7, 1972, that their services would not be required for the ensuing school year of 1972-1973 because average daily attendance in the Bellflower School District had declined. Both the petitioners and the teachers requested and were granted a hearing, which commenced April 24, 1972, and continued on May 2, 1972. The hearing officer[1] filed a proposed decision on May 6, 1972. He recommended that, while good cause existed for terminating the teachers, the same was not true for the school nurses.[2]

On May 11, 1972, the Board met to consider the hearing officer's decision. At that meeting, no final determination was made regarding petitioners' status. Instead, proceedings involving the petitioners were continued until such time as the Board could obtain and examine the transcript of proceedings before the hearing officer. After receipt of the transcript, the Board notified the petitioners that there would be a hearing on June 22, 1972, at which time they could present further argument in support of their continued employment. On June 22, 1972, after further hearing, the Board decided not to adopt the hearing officer's proposed decision with respect to the petitioners, and directed termination of petitioners' employment. The application for mandate followed, seeking reinstatement and an award of attorney fees for maintenance of the action.

The trial court stated that it issued the writ on the sole and narrow ground that the Board, by delaying its decision and notification of the nurses until June 22, 1972, had not complied with the applicable notice requirement of Education Code section 13443, subdivision (e) and, as a result, that the Board could not legally terminate the petitioners on June 22.

---

[1] Appointed from the staff of the Office of Administrative Hearings as provided in Government Code sections 11501 and 11502.

[2] The decision was based upon the view that a proper termination rate of 9 percent, applied equally to the teaching and nursing group, should not result in the necessity of terminating the employment of any of the petitioners.

Education Code section 13447 provides that permanent employees, such as the nurses herein involved, may be terminated from employment when there is a decline in attendance in a school district, or when there is reduction or discontinuance of a particular kind of service. It further provides that "Notice of such termination of services . . . to take effect not later than the beginning of the following school year, shall be given before the 15th of May in the manner prescribed in Section 13443 [of the Education Code]. . . ."

Education Code section 13443 contains a detailed, statutory scheme of procedures which are to be followed by a school district when it desires to terminate the services of a probationary employee. In essence, it sets forth a timetable commencing with a preliminary notice of intent not to reemploy, due no later than March 15 of the particular year. The affected employee may then request a hearing as a matter of right. The hearing "shall be conducted and a decision made in accordance with Chapter 5 (commencing with Section 11500) of Part I of Division 3 of Title 2 of the Government Code and the governing board shall have all the power granted to an agency therein. . . ." Chapter 5 of the Government Code contains general provisions applicable to administrative adjudication. The hearing officer, appointed pursuant to chapter 5, must submit his decision to the governing board by May 7 of the same year.

Section 13443, subdivision (e) requires that a [final] "Notice . . . by the governing board that [the employee's] service will not be required for the ensuing year, shall be given no later than May 15." The consequence to the Board of not meeting this deadline is contained in subdivision (h), which states that "In the event that the governing board does not give notice provided for in subdivision (e) of this section on or before May 15, the employee shall be deemed reemployed for the ensuing school year." Subdivision (i) provides that "If after the request for hearing pursuant to subdivision (b) any continuance is granted pursuant to Government Code section 11524, the dates prescribed in subdivisions (c), (d), (e) and (h) which occur on or after the date of granting the continuance shall be extended for a period of time equal to such continuance."[3]

In the instant case, the petitioners duly received the initial intent notice (subd. (a)), and requested a hearing. The hearing was held and the decision communicated to the Board by May 7. As the statutory time table is pres-

---

[3]Government Code section 11524 provides that "The agency [involved in the administrative hearing] may grant continuances. When a hearing officer of the Office of Administrative Hearings has been assigned to such hearing, no continuance may be granted except by him or by the hearing officer in charge of the appropriate regional office of the Office of Administrative Hearings, for good cause shown."

ently constructed, the Board then had until May 15 to announce its decision regarding petitioners. On May 11, however, the Board made the crucial decision to delay final disposition of the matter for an indefinite period of time while a transcript was obtained. The Board's delay was occasioned by the fact that, pursuant to Government Code section 11517, subdivision (c), it is not required to adopt a hearing officer's recommendation, but may make its final determination by examination of the record of hearing; it also has the power to refer the matter back to the same hearing officer for the purpose of taking additional evidence.

The issue presented is whether the Board, by its unilateral action in delaying decision past the May 15 deadline to June 22 for the purpose of exercising its right to an independent judgment, was in compliance with section 13443, subdivisions (e), (h) and (i). Resolution of the issue depends upon interpretation of section 13443 and its relation to the general provisions of Government Code section 11500 et seq.

The trial court determined that the subdivision (e) requirement of notice before May 15 was mandatory in the sense that if such notice was not given in time, subdivision (h) provided for automatic reemployment, at least for the ensuing school year. The trial court's decision was based upon the view that the provisions of section 13443 were intended by the Legislature to protect the rights of school district employees.

The Board argues on this appeal that the statute, as interpreted by the trial court, effectively limits the Board's power to overturn the decision of a hearing officer, because the time allowed pursuant to statute—from May 7 to May 15—is insufficient time for the Board to obtain a transcript of hearing and consider it before rendering a final decision. Nor is there time, as provided in Government Code section 11517, subdivision (c), to return the case to the hearing officer to take additional testimony or consider additional evidence.

We agree that a dilemma is created for the governing board exercising its general adjudicatory powers by such an interpretation of section 13443. The Board must deal with a timetable that is nearly impossible to meet if it is to delay issuing a decision contrary to that of a hearing officer,—i.e., the giving of a termination notice in a particular case,—until it has had occasion to examine the transcript of hearing or consider additional evidence. The Board in the instant case cannot be said to have unnecessarily prolonged its consideration of the employment issue before it.

A further problem may be created by the fact that numerous school districts have occasion to use hearing officers from the state agency during

approximately the same time period; this may further add to the problem of obtaining an adequate record in time.

It is difficult to reconcile the applicable general statutory provisions with the mandate contained in section 13443 of the Education Code. We have examined, in a search for the legislative intent in enacting section 13443, the report of the Senate Subcommittee on School Personnel[4] concerning its passage. It states that section 13443 was specifically designed to ameliorate the situation which left "the teacher's employment status in limbo during a time when districts are interviewing prospective teachers for the following year." (P. 21.) The section, including the timetable for notice and hearing, was intended by the subcommittee to prevent decisions on reemployment from being delayed without a hearing and past the dates provided in the statute.

The conclusion is inescapable that the Legislature intended the notices required by section 13443 to be mandatory. While subdivision (i) purports to cover continuances of hearing, and extends the notice provisions if such are granted, we conclude that the intention was not to allow the governing board, by unilateral action to continue proceedings to some indeterminate future time without meeting the notice requirements. Notice provisions similar to those contained in section 13443 (as they existed in 1965) were considered in *Ward* v. *Fremont Unified Sch. Dist.*, 276 Cal.App.2d 313 [80 Cal.Rptr. 815], wherein it was stated (at p. 322): "The rule in California and the majority of the United States jurisdictions is that when a consequence is enunciated for failing to comply with an act on a given date, that date is deemed jurisdictionally mandatory, not directory." It was concluded in *Ward* that, since notice had not been given him by May 15, Ward's services could not be terminated by the school board for the ensuing year.

Thus, it appears that the general administrative adjudication provisions of the Government Code and the requirements of Education Code section 13443 are in conflict as applied to the instant case. It has long been a rule of statutory construction that "when a general and particular [statutory] provision are inconsistent, the latter is paramount to the former." (Code Civ. Proc., § 1859; also see 45 Cal.Jur.2d, Statutes, § 119, p. 628.) Applying this rule, the requirement of section 13443 must prevail.[5] The

---

[4] 1 Senate Journal Appendix (1965 Reg. & Ex. Sess.) Report of the Senate Fact Finding Committee on Education to the Legislature, pages 21-22.

[5] It should also be noted that when construing two inconsistent statutes, the later one will prevail over the earlier, especially if the later is a special act applicable to a particular subject. (45 Cal.Jur.2d, Statutes, § 121, p. 630.) The general provisions

ultimate resolution of the Board's dilemma lies with the Legislature, which might wish to address itself to the problem.

The Board points to two decisions since *Ward,* i.e., *McGlone* v. *Mt. Diablo Unified Sch. Dist.,* 3 Cal.App.3d 17 [82 Cal.Rptr. 225], and *Bekiaris* v. *Board of Education,* 6 Cal.3d 575 [100 Cal.Rptr. 16, 493 P.2d 480], involving the rights of probationary teachers. The actual presentations disclosed that section 13443 notice requirements were not met by the governing boards in question. But neither decision relied upon or even mentioned such requirements. In *Bekiaris,* the Supreme Court remanded the case for additional administrative action. The Board contends that these two decisions overrule *Ward* by implication. In our view, these decisions are not necessarily inconsistent with the interpretation made in *Ward* that the notice requirements under consideration were mandatory; the additional determination made in *Ward* that noncompliance with the notice requirements affected the governing body's *jurisdiction* is open to question, and we do not adopt the decision of *Ward* to that extent. With such a limitation on the meaning of *Ward,* it does not follow that the later cases are in conflict with it.

We conclude that the trial court correctly construed section 13443 as having mandatory application to the instant case and that it properly granted the writ.

■ Petitioners have also appealed, but on nonmeritorious grounds. They contend that the trial court should have adopted the hearing officer's decision and incorporated it into the judgment. The decision to issue mandate was not based upon the merits of the nurses' continued employment with the school district. The court, therefore, was under no duty to incorporate the decision of the hearing officer into its judgment.

■ Petitioners also complain that the trial court did not award them attorney fees. While their petition for mandate did not specify any particular basis for such an award, they undoubtedly had reference to Government Code section 800, which provides: "In any civil action to appeal or review the award, finding or other determination of any administrative proceeding under this code or under any other provision of state law, . . . where it is shown that the award, finding, or other determination of such proceeding was the result of arbitrary or capricious action or conduct by a public entity or an officer thereof in his official capacity,

applicable herein were enacted in 1945; subsequent amendments have not changed the meaning of the provisions pertinent here. Section 13443 was revised in 1965 and substantially amended in 1969, with further changes made in 1970 and 1971.

the complainant if he prevails in the civil action may collect reasonable attorney's fees, but not to exceed one thousand five hundred dollars ($1,500), where he is personally obligated to pay such fees, from such public entity, in addition to any other relief granted or other costs awarded."

The petition for mandate neither alleged "arbitrary or capricious action" on the part of anyone, nor that the petitioners were in fact personally obligated to pay attorney fees to their counsel in the amount of $1,500 or any other sum. Such allegations should have been placed before the court in some fashion. (See *Olson* v. *Hickman,* 25 Cal.App.3d 920 [102 Cal. Rptr. 248].) In the absence of a record which establishes the basis for the trial court's decision not to award fees, we cannot say that error was committed.

The judgment is affirmed.

Kingsley, J., and Dunn, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied May 1, 1974.